IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL DEAN PERRY | § | |
| v. | § | CIVIL ACTION NO. 6:07cv536 |
| MAXEY CERLIANO, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Michael Dean Perry, an inmate currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

Perry amended his original complaint on February 4, 2008. In this amended complaint, he says that Sheriff Maxey Cerliano retaliated against him for previous lawsuits by ordering guards to strip search him and shoot him with a taser gun, and pepper spray him. He also said that Cerliano always locked him up in solitary confinement, again in retaliation. Perry stated that Captain Rodney Burns would not provide him with indigent supplies to keep him from filing suit, and that Burns had ordered guards to strip search him and shoot him with a taser, and that he be locked up in solitary. He also says that Burns refused to provide him with "ADA rights" under the Americans with Disabilities Act and refuses to answer his grievances, and denied him recreation.

Next, Perry says that Dr. Browne, the Gregg County jail doctor, denied him chronic medical treatment and cut off his medication in retaliation for his having requested a urine and blood test for hepatitis C, and for treatment for an injury caused by a forced catheterization at the hospital. He says that Nurse Dawn York denied him medical care, including antibiotics for a urinary tract infection, and overcharged him for medication under the guise of an "administrative fee."

1

Perry goes on to say that Sgt. Weatherall forced him to remain in solitary confinement without good cause and would not allow him visitation, recreation, or attendance at religious services. He asserts that Weatherall ignored his grievances and denied him access to a law library, telling him that his court-appointed attorney represented his access to court. He states that Lisa Chatterton, a Longview police officer, falsely arrested him without probable cause; she took him to the hospital where he was handcuffed to the bed, and she held him down while nurses forced a catheter into his body to obtain evidence. Afterwards, Perry says, he was taken back to jail and placed naked in a cell despite having a serious infection, and he was shot with a taser by guards for complaining about his treatment. In a later pleading, Perry identifies these guards as Scott Rose, Keith Graham, and William Jennings.

Next, Perry sues Good Shepherd Medical Center in Longview, as well as unknown persons there, for allowing police officers to handcuff him to the bed, and then forcing a catheter into his body without his consent. He says that this caused him "extreme pain and distress" and has led to continuing problems, including urinary incontinence. He says that Dr. Browne told him that the incontinence was caused by a medication called amitriptylene, which Perry says is a lie, since he has been taking amitriptylene for two years and never had any problems until the incident at the hospital.

In a supplemental complaint, Perry fills in the names of some of the persons whom he wishes to sue. He identifies the medical personnel at Good Shepherd Hospital as Dr. Gregory Dugella, Dr. Robert Dickson, Sal Perez, and Mary Kidd, the director of medical records, Perry says that Kidd turned over his personal, private medical records to the District Attorney without his consent, which he says is illegal. He also says that he wishes to sue Brian LeMaire and Jenny Huckle, the assistant District Attorneys who prosecuted him. Perry also named a jail official named Cpl. Herman.

An evidentiary hearing was conducted on August 4, 2008. At this hearing, Perry testified that he was arrested by police officer Lisa Chatterton without a warrant or probable cause. He was arrested on a charge of aggravated assault, but the incident did not occur. Perry stated that

Chatterton falsified the police report by saying that the report of the 911 call, reporting a "suspicious person," had been updated, but it had not been. He added that no threat had been stated on the 911 call and that when he tried to get a transcript of the call, the judge said that there was not one. Perry said that the alleged caller, Katrina Wilson, did not give a sworn affidavit.

Perry stated that the aggravated assault charge was dismissed, but that he was given 25 years for possession of a controlled substance and tampering with evidence, which charges arose out of the same incident. He says that Chatterton had stated that she arrested him because he committed a felony within her view, but that this also was not true, because all he had was a legal pocketknife and it was in his pocket when the officer arrived. He was never formally booked into the Longview police department, nor was he fingerprinted or photographed, which Perry says also made his arrest illegal.

Instead, Perry says that he was taken to the hospital after his arrest and handcuffed to the bed. He states that he was never tested for a drug called Seroquel,[1] although he was tested for a number of other drugs. He stated that at his trial, the doctor testified that there was no specific test for Seroquel, but the crime lab expert said that there was. Perry said that one of the key elements in his indictment concerned Seroquel, and that Chatterton had falsely told the medical staff at the hospital that he had taken 15 or 20 of the pills, when he had not.

Perry complained that at his trial, he never got to call any witnesses or present any evidence. He says that he submitted *pro se* motions in his criminal case but that the clerk would not file them. He tried to remove his appointed attorney, Kevin Settle, and Settle also filed a motion to be removed as Perry's attorney, but the trial court refused to do so.

Next, Perry said that he was infected with MRSA, also known as methicillin-resistant staphylococcus aureus, while at Good Shepherd Hospital, but the hospital staff did not treat it before

---

[1] Seroquel (quetiapine) is an anti-psychotic medication, used to treat the symptoms of such conditions as schizophrenia and bipolar disorder. *See* http://www.drugs.com/seroquel.html.

returning him to the jail. He says that the jail staff did not treat the infection until he told them what medications to give him, and when the infectious diseases nurse began giving him that medication, the boil on his back went away. However, Perry says, he has been told that MRSA is a permanent infection and he can never be rid of it. Perry also states that Dr. Browne and Nurse York told him that the boil was "fatty tissue" which did not need to be treated, which Perry says was incorrect.

The Court then asked Perry about the different defendants whom he had sued. With regard to Sheriff Maxey Cerliano, Perry says that in 2003, Sheriff Cerliano "removed inmates' access to court." Perry stated that he had experienced problems over several years in the jail in this regard, and stated that because Cerliano was the sheriff, he implemented the policies.

Perry said that he was put into solitary confinement "because they don't like me" and because he had filed a lawsuit in 2003. He was prevented from attending church or having visitation. He explained that he wished to use the law library to research the charges of aggravated assault with a deadly weapon, tampering with physical evidence, and possession of a controlled substance. Perry stated that the previous lawsuit which he had filed "made the news" and that two jail staffers, named Denham and Crump, were fired; he said that when the case went to trial, he did not have his evidence with him, and that the case had been reversed and remanded by the Fifth Circuit.[2]

Perry further stated that he believed that Sheriff Cerliano was in charge of the medical department, and therefore responsible for the "outrageous prices" charged for medication. He says that he was told that these prices, 50 cents per pill, were "administrative fees" which were charged for bringing the pills to the cell rather than for the pills themselves. However, Perry says that he is a "chronic care patient" and so he is not supposed to be charged for medications at all. Furthermore,

---

[2]Court records show that the case of Perry v. Cerliano, et al., civil action no. 6:01cv482, went to trial on July 16, 2002. At trial, Perry refused to answer questions and attempted to invoke the Fifth Amendment, and so the Court dismissed the lawsuit with prejudice for failure to prosecute or to obey an order of the Court. Perry did not appeal the dismissal but appealed the denial of his motion for new trial, and the Fifth Circuit dismissed the appeal as frivolous. Perry v. Cerliano, slip op. no. 02-41297 (5th Cir., August 21, 2003). There is no mention in the Fifth Circuit records of a reversal or remand.

4

Perry says, Cerliano is "in charge" of Dr. Browne and Nurse York, who allowed the boil on his back to become huge and then sent him to prison with it. He says that unknown jail staff manipulated the temperature in his cell so that it went down to 39 degrees, and that jail staff came into his cell and took photographs of the evidence in his criminal case, and tried to give the pictures to the district attorney's office. The jail staff also harassed him, Perry said, because he is a "jailhouse lawyer" who tries to help other inmates.

Next, Perry says that Dr. Browne, the county doctor, would not treat the staph infection in his back and would not give him medication for his constant back pain. He says that he has four herniated discs in his back and so he is entitled to treatment under the Intractable Pain Act and the Americans with Disabilities Act. Dr. Browne also cut off Perry's amitriptylene, because the doctor "got mad" when Perry filed a grievance.

Perry reiterated that Dr. Browne "refused to treat" the MRSA, and so the infection turned into a huge boil on his back. He says that an infectious diseases nurse told him that the infection was "turning toward his heart," which scared him, so he filed a grievance setting out the medication which he believed he needed, and the nurse started him on it. The boil went away, but Perry says that the nurse told him that MRSA is not curable and would stay with him for life.

Perry stated that he believed that Dr. Browne would not treat him for MRSA because of the grievances which he had filed, saying that there was no other explanation. He notes that before he went into the jail, Dr. Browne had started him on treatment for a fingernail infection, but then discontinued it after Perry went to jail.

Similarly, Perry said that Nurse Dawn York refused him medications for the staph infection and for his back pain. He stated that she also charged him money for medications which were never provided.

Perry stated that other inmates told him that Sgt. Weatherall opened his legal mail and read his pleadings. He said that Weatherall made "veiled threats" to him and that one of the reasons that he was placed in the solitary confinement cell was because "Weatherall did not like him." Perry

5

said that he had to send his pleadings out to be copied by jail staff, but some of them were never returned to him and so he had to re-write them. He speculated that the jail officials, including Corporal Herman, may have been giving copies of his pleadings to the district attorney's office. Perry stated that jail officials took photos of the jury list which was in his cell and told him that they had "just taken the staple out," but other inmates heard them talking about it.

When asked if there might be any other reasons that he was in solitary confinement, Perry said that he had sued Denham, one of the fired jail staffers, in 2003, for assaulting him. When he arrived in the Gregg County Jail in the present incarceration, some guards made fun of him, shot him with a taser, and pepper-sprayed him, although he did not know the names of the guards. Perry again said that there was no reason that he should have been in solitary confinement, saying that he had received no disciplinary case and no hearing, and the aggravated assault case with which he was charged was dismissed. He also reiterated that the temperature was manipulated so as to make him uncomfortable.

Perry said that he was suing police officer Lisa Chatterton because she falsified the police report and falsely arrested him. She said that the 911 call had been "updated" when it had not been. Perry said that he had both police reports, the original one and the one filed a couple of days later, which showed that falsification had taken place. Perry insisted that he had not committed a crime and that he should not be in jail.

In addition, Perry said that Chatterton lied to the doctors at Good Shepherd Hospital, and so they "performed medical procedures without a warrant." Specifically, he states that she told them that he had ingested some 15 to 20 Seroquel, which Perry says is not true.

Perry stated that the hospital personnel were at fault because they restrained him and took blood and urine from him without a warrant. He says that they claimed that they did not do so, but that the hospital records show that he was tested for various drugs. Perry states that Dr. Dugella obviously did not like him because he, Perry, had seen Dr. Dugella a few weeks before his arrest, and the doctor told him that "we don't supply drugs for drug addicts." Perry also complains that Dr.

6

Dugella testified falsely at his trial, saying that there was not a specific test for Seroquel when the crime lab expert said that there was. The other hospital personnel named in the lawsuit were Dr. Robert Dickson, Sal Perez, and record administrator Mary Kidd; Perry asserts that these persons were also involved with the treatment he received, and that Kidd wrongfully turned over his records to the prosecutor without his consent.

Perry states that he wishes to sue the assistant district attorneys, Brian LeMaire and Jenny Huckle, for denying him due process at trial. In a pleading filed July 31, 2008, Perry says that he wishes to add Lt. Phillips, district clerk Barbara Duncan, and court reporter Grelyn Freeman. He says that Phillips "colluded with other prison officials in violating Perry's civil rights by keeping Perry locked up in solitary confinement without justification and without due process. Searching Perry's legal documents without a search warrant. Manipulating the temperature in Perry's separation cell to cause Perry pain and distress, even though Perry has [restrictions of] no temperature extremes and no humidity extremes. Denied Perry the right to attend church services and, inter alia, the privileges accorded other prisoners that are put in general population." He says that Duncan would not file his *pro se* pleadings in his criminal case and Freeman failed to timely file his appellate record.

In this pleading, Perry makes reference to a prior amended complaint, which was actually a motion for leave to amend his complaint (docket no. 6) in which he stated that he wished to add three additional defendants, including Officers Strichausen and England from the Gregg County Jail, and his court-appointed attorney, Kevin Settle. He says that the officers read his legal documents and retaliated against him by not allowing him to go to church services or recreation, and that Settle improperly represented him.

Legal Standards and Analysis

Perry complains that Officer Lisa Chatterton falsely arrested him and falsified the police report, resulting in a conviction for a crime which he did not commit. At the evidentiary

7

hearing, he testified at length about the circumstances of his arrest and the unjust nature of his conviction.

However, Perry has not shown that this conviction has been overturned or set aside; on the contrary, he testified that he "should not be in prison now." In Heck v. Humphrey, 114 S.Ct. 2364 (1994), the Supreme Court stated that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions which would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. 2254. Heck, 114 S.Ct. at 2372; *see also* Boyd v. Biggers, 31 F.3d 279 (5th Cir. 1994). All of Perry's claims which could call the validity of his conviction into question must be dismissed until such time as the Heck pre-conditions are met; Perry cannot challenge the validity of a criminal conviction through the vehicle of a civil lawsuit.

Perry also says that Chatterton lied to the doctors at Good Shepherd Hospital by saying that he had ingested Seroquel, when in fact he had not. This alleged lie formed the basis for the charge of tampering with physical evidence; the police report indicates that Perry was in possession of Seroquel which did not belong to him, and that while he was being booked into the jail, he grabbed the pill bottle and swallowed the entire contents. Hence, if Perry could show that Chatterton lied and that he did not swallow the pills, this also could call his conviction on the charge of tampering with physical evidence into question; for this reason, this claim also is barred by Heck until such time as he can show that his conviction on this charge has been overturned or set aside. Perry's claims against Lisa Chatterton should be dismissed until the Heck pre-conditions have been met.

Similarly, Perry sues persons associated with the conduct of his criminal case, including the district attorneys, his defense attorney, the court clerk, and the court reporter. These

claims also relate to the validity of his conviction or the viability of his appeal of this conviction, and as such cannot be pursued until the Heck pre-conditions are met.

Even were this not the case, Perry has shown no valid basis for proceeding against these persons. The district attorneys have absolute immunity from damages lawsuits for actions undertaken in their prosecutorial capacities, such as Perry brings here. Dayse v. Schuldt, 894 F.2d 170, 172 (5th Cir. 1989). This immunity from liability has been held to extend to a prosecutor's actions in initiating, investigating, and pursuing a criminal prosecution. Cook v. Houston Post, 616 F.2d 791, 793 (5th Cir. 1980). Perry cannot maintain a Section 1983 lawsuit against his court-appointed attorney because the Supreme Court has held that attorneys, in the course of representing defendants, do not act under color of state law within the meaning of Section 1983; thus, even though the defective performance of defense counsel may cause the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of section 1983. Briscoe v. LaHue, 460 U.S. 325, 328 n.6 (1983).

Perry complains that the Gregg County district clerk violated his rights by failing to file his *pro se* pleadings, but he fails to show that he has a right to have such pleadings filed, inasmuch as he was represented by counsel. There is no right to hybrid representation in the State of Texas. Scarbrough v. State, 777 S.W.2d 83, 92 (Tex.Crim.App. 1989). Hybrid representation is defined as "partially pro se and partially by counsel" representation. Landers v. State, 550 S.W.2d 272, 280 (Tex.Crim.App. 1977); *see also* Rudd v. State, 616 S.W.2d 623, 625 (Tex.Crim.App. 1981) [panel opinion] (a *pro se* appellate brief, filed by a defendant who is represented by counsel, preserves nothing for review). Thus, because Perry was represented by counsel during the criminal proceedings against him, he had no right to file *pro se* motions, as this would constitute impermissible hybrid representation. He has failed to show that district clerk Barbara Duncan, in not filing pleadings which Perry was not entitled to file, violated any rights secured to him by the Constitution or laws of the United States.

9

Perry also sues the court reporter, saying that she delayed in preparing the transcript. The record of Perry's appeal shows that the court reporter requested and was granted an extension of time in which to prepare the transcript. *See* http://www.6thcoa.courts.state.tx.us/opinions/case.asp?FilingID=7588. While Perry might be unhappy with the delay, he has failed to show that the court reporter acted improperly, inasmuch as her request for an extension was approved by the appellate court. He has failed to show a violation of the Constitution or laws of the United States and his claim on this point is without merit.

Next, Perry sues Good Shepherd Hospital and some of the personnel there. He names Dr. Douglas Dugella, Dr. Richard Dickson, Sal Perez, and Mary Kidd, the records administrator. These Defendants have filed motions to dismiss the claims against them.

Good Shepherd Medical Center, nurse Sal Perez, and medical records administrator Mary Kidd filed their motion to dismiss on July 29, 2008. In this motion, they state that Perry arrived at the hospital shortly before 11:30 p.m. on August 18, 2007, in the custody of the Longview Police Department, with a report that he had overdosed on Seroquel. Perry smelled of alcohol, was slurring his speech, and was described as "drowsy, sedated, and listless."

Perez placed a nasogastric tube, set for continuous suction, and commenced the process of pumping out Perry's stomach. Perez then inserted a Foley catheter, under instructions from the physicians. Blood work drawn showed a high level of alcohol, as well as benzodiazepine (tranquilizers) and cannabis (marijuana).

About twelve hours later, shortly before noon on August 19, Dr. Dugella examined Perry, and the nasogastric tube and catheter were removed. The medical records show that at that time, Perry had little responsiveness to stimuli. At 2:00 p.m., Perry was transferred from the emergency room to another portion of the hospital; his condition was improving but he still had little responsiveness at that time. By the time that he was discharged on August 20, the medical records state that he was throwing urinals around and cursing at the nursing staff.

In the motion to dismiss, the hospital, Perez, and Kidd state that Perry has not alleged deliberate indifference, but only complications from the manner in which he was treated, that they are not state actors for purposes of Section 1983 liability, and that Perry has failed to state a claim upon which relief may be granted. Perry does not appear to have filed a specific response to this motion to dismiss.

Dr. Dugella and Dr. Dickson have also filed a motion to dismiss. In this motion, they assert that the Court lacks subject matter jurisdiction because Perry has not set out a federal cause of action, that Perry has failed to state a claim upon which relief may be granted, that they did not act under color of state law, they did not deprive him of a constitutional right or act with deliberate indifference, and Perry has not shown that they acted with negligence toward him so as to trigger any liability under the doctrine of supplemental jurisdiction. Perry does not appear to have filed a response to this motion to dismiss.

The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994); *see also* Hagerty v. Succession of Clement, 749 F.2d 217, 221 (5th Cir. 1984); Daniel v. Ferguson, 839 F.2d 1124, 1126 (5th Cir. 1988).

In this case, Perry has made no showing that Good Shepherd Hospital or its personnel were acting under color of state law. The mere fact that they provided him with medical treatment while he was in the custody of the Longview Police Department is not enough by itself to make the hospital or its personnel into state actors for purposes of Section 1983 liability. *See* Nelson v. Cauley, 243 Fed.Appx. 876 (5th Cir., August 3, 2007) (not selected for publication in the Federal Reporter) (available on WESTLAW at 2007 WL 2228568). In that case, a state prisoner sued Lake Point Hospital and a nurse named Myrick for forced catheterization in order to obtain a urine specimen. The Fifth Circuit held that absent a showing that the nurse acted under state compulsion

in doing so, she was not a state actor and so was not amenable to suit under Section 1983. The Court cited Richard v. Hoechst Celanese Chemical Group, Inc., 355 F.3d 345, 352 (5th Cir. 2003) (outlining tests to determine state action, including the "public function" test, the "state compulsion" test, and the "nexus" test).

A very similar circumstance exists in the present case. As in Nelson, Perry alleges that the hospital personnel performed forced catheterization upon him, but makes no showing of state action or of state compulsion so as to transform the hospital personnel into state actors. For this reason, the motions to dismiss filed by the Defendants Good Shepherd Hospital, Dr. Dugella, Dr. Dickson, Sal Perez, and Mary Kidd should be granted.

Perry also raises claims concerning his treatment at the Gregg County Jail. Specifically, he says that: three officers, whom he identifies as Rose, Jennings, and Graham, tasered him and pepper-sprayed him on August 20, 2007, in retaliation for his having filed grievances and a previous lawsuit; that he was kept in a solitary confinement cell as retaliation for his filing grievances; this cell was kept extremely cold as a means of punishing and retaliating against him; his evidence in his criminal case was photographed and copies given to the district attorney; his access to court was interfered with and he was not provided with indigent supplies; he received inadequate medical care in the jail; he was denied religious services, visitation, and recreation in retaliation for his having filed grievances; and his rights under the Americans with Disabilities Act and the Intractable Pain Act were violated.

Of these claims, Perry should be allowed to proceed on his claims regarding the use of force on August 20, the allegation that he was kept in a solitary confinement cell, which was kept very cold, as a means of retaliation, the allegation that he was denied religious services, visitation, and recreation as a means of retaliation, and his allegations concerning the medical care in the jail.

Perry's claim that evidence in his cell was photographed and copies given to the district attorney could show misconduct which relates to the validity of his conviction, and so cannot be pursued until the Heck pre-conditions are met.

Perry also complains that he was denied access to court, to the law library, and to indigent supplies. He explained that he wanted to use the law library to research the criminal charges pending against him, but he had appointed counsel representing him in his criminal case. The Fifth Circuit has specifically held that inmates who are represented by counsel have no right to go to the law library to work on their own criminal cases. Cruz v. Hauck, 515 F.2d 322, 331 (5th Cir. 1975), *cert denied,* Andrade v. Hauck, 424 U.S. 917, 96 S.Ct. 1118 (1976). Because Perry was represented by counsel, his claim of denial of access to the law library is without merit.

To the extent that Perry may claim that he sought access to the law library or to indigent supplies for civil matters unrelated to his criminal case, his claim is likewise without merit. As a general rule, inmates have a right of access to legal materials, and prison officials cannot deny inmates access to court. Bounds v. Smith, 430 U.S. 817 (1976). However, actual injury must be shown to set out a violation of Bounds. Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish a violation of the right of access to court); *accord*, Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986). In Lewis, the Supreme Court provided the following examples of "actual injury" under Bounds:

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 116 S.Ct. at 2180.

In this case, Perry has not shown that he suffered any cognizable harm as a result of the claimed denials of access to legal materials or to the law library. He had no right to hybrid representation in his criminal case, and he has not shown that a complaint which he prepared was dismissed for failure to satisfy a technical requirement or that he was stymied in bringing a civil complaint. In Mann, the record showed that the plaintiff filed a detailed civil complaint and an application for leave to proceed *in forma pauperis*, which was granted. Service was issued and answers were filed, and the court ordered that discovery proceed. Mann also amended his complaint

and asked for additional relief. The Fifth Circuit stated that "Mann himself proved in an irrefutable manner that he was able to file a legally sufficient complaint: by doing so." Mann, 796 F.2d at 84.

Similarly, Perry filed an original complaint and application for leave to proceed *in forma pauperis*, which has been granted. Service has been done and answers have been filed, and Perry has had an evidentiary hearing. The Defendants have been ordered to disclose relevant information to Perry and have done so. Perry, like Mann, was manifestly able to file a legally sufficient complaint, and he has failed to show that he suffered any cognizable harm as a result of the alleged inadequacies of the law library or the alleged failure to provide him with indigent supplies. Perry's claims in this regard are without merit.

Perry alleged that his rights under the Americans with Disabilities Act were violated in that he was not receiving proper treatment for his disabilities under the Act. However, the courts have held that a lawsuit under the Rehabilitation Act or the Americans with Disabilities Act cannot be based on medical treatment decisions. *See* Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005); Fitzgerald v. Correctional Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (ADA does not create a remedy for medical malpractice).

Furthermore, the Fifth Circuit has held that there is no individual liability in lawsuits under the Rehabilitation Act, and that individual liability for claims of violations of the Act cannot be secured by casting the lawsuit under Section 1983 rather than under the Act. Lollar v. Baker, 196 F.3d 603, 608-09 (5th Cir. 1999). Because the remedies, procedures, and rights under the Americans with Disabilities Act are the same as those under the Rehabilitation Act, there is likewise no individual liability for claims of violations under the ADA. Washburn v. Texas, — F.Supp.2d —, slip op. no. A-07-CA-116 (W.D.Tex., January 16, 2008) (available on WESTLAW at 2008 WL 170033) (unpublished), *citing* Kacher v. Houston Community College System, 974 F.Supp. 615, 619 (S.D.Tex. 1997); *see also* Bostick v. Elders, --- F.Supp. ---, docket no. 2:02cv291 (N.D.Tex., Jan. 10, 2003) (available on WESTLAW at 2003 WL 1193028); Berthelot v. Stahlder, --- F.Supp. ---.

docket no. Civ.A. 99-2009 (E.D.La., October 19, 2000) (available on WESTLAW at 2000 WL 1568224).

In this case, Perry seeks to vindicate rights under the ADA through the vehicle of a Section 1983 lawsuit, which the Fifth Circuit has said is improper, and he seeks to impose individual liability upon the named defendants for violations of the ADA, which also is improper. Consequently, Perry's claims under the ADA are without merit.

Similarly, Perry refers to a law which he calls the "Intractable Pain Act." This law, properly called the "Intractable Pain Treatment Act," is found at Tex. Occupations Code §§107.001*ff*, and permits, within certain limitations, the prescription of dangerous drugs or controlled substances for persons in intractable pain.

As noted above, Section 1983 lawsuits require a showing of a violation of a right secured by the Constitution or laws of the United States. Johnson v. Dallas Independent School District, 38 F.3d at 199. Violations of state law alone are not cognizable in Section 1983 lawsuits. Smith v. Sullivan, 611 F.2d 1039, 1045 (5th Cir. 1980); Baker v. McCollan, 443 U.S. 137, 146 (1979). Perry cannot maintain a Section 1983 lawsuit based on alleged violations of the Texas Intractable Pain Treatment Act. To the extent that he complains that the jail medical staff were deliberately indifferent to his serious medical needs by not providing him with pain medication, this claim is subsumed within his claim of inadequate medical care.

Finally, in his amended complaint filed on September 15, 2008, Perry seeks to bring in claims against officials of the Texas Department of Criminal Justice, Correctional Institutional Division, for alleged incidents occurring at the Boyd Unit of TDCJ-CID. This claims are faulty for a number of reasons. First, they have nothing to do with the incidents forming the basis of this lawsuit, and Rule 20 of Federal Rules of Civil Procedure, allows the joinder of several parties if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants. That is not the case here; the claims against the parties whom Perry wishes to add did not arise from a single transaction, nor do they contain common questions of fact or law.

Second, Perry has not alleged that he has exhausted his administrative remedies concerning the TDCJ defendants whom he wishes to add, and in fact states that some of these claims arose as recently as September 11, 2008, *one day* before Perry signed the amended complaint, rendering it impossible for Perry to have exhausted his administrative remedies. Finally, the Boyd Unit is in Teague, Freestone County, which is outside of the Eastern District of Texas, and so venue is improper in this Court. For these reasons, any claims which Perry raises against officials in the Texas Department of Criminal Justice, Correctional Institutions Division, should be dismissed without prejudice to permit Perry to pursue separate legal action, in the court of appropriate jurisdiction and venue, once he has fully exhausted his administrative remedies as required by 42 U.S.C. §1997e. It is accordingly

ORDERED that: (1) All of Perry's claims relating to the legality of his arrest or conviction (including his claim that evidence was photographed in his cell and copies given to the prosecutor) are hereby DISMISSED without prejudice, with refiling subject to a showing that Perry's conviction has been set aside or otherwise declared invalid; (2) all of Perry's claims against Good Shepherd Hospital or the medical personnel there are hereby DISMISSED with prejudice as frivolous because of the lack of state action, a necessary prerequisite to suit under Section 1983; (3) all of Perry's claims against TDCJ personnel shall be dismissed without prejudice as improperly joined, for failure to exhaust administrative remedies, and for improper venue; Perry may refile these claims in a separate lawsuit in the court of appropriate jurisdiction and venue once he has exhausted his administrative remedies on these claims; (4) Perry's claim of denial of access to the law library and to legal materials, and his claims under the Americans with Disabilities Act and the Intractable Pain Act are hereby DISMISSED with prejudice as frivolous; and (5) Perry's claims against the prosecutors, his defense attorney, the district clerk, and the court reporter are hereby DISMISSED with prejudice as frivolous. It is further

ORDERED that the motions to dismiss filed by Good Shepherd Hospital, Dr. Dugella, Dr. Dickson, Sal Perez, and Mary Kidd (docket no.'s 68 and 83) are hereby GRANTED. It is further

ORDERED that the Defendants Lisa Chatterton, Good Shepherd Hospital, Dr. Dugella, Dr. Dickson, Sal Perez, Mary Kidd, Brian LeMaire, Jenny Huckle, Barbara Duncan, Grelyn Freeman, and Kevin Settle are hereby DISMISSED as parties to this lawsuit.

This order shall have no effect upon the following three claims: (1) Perry was subjected to retaliation while in the Gregg County Jail for the exercise of his right to seek redress of grievances; (2) Perry was subjected to deliberate indifference to his serious medical needs while he was confined in the Gregg County Jail; and (3) excessive force was used on him on August 20, 2007, while he was confined in the Gregg County Jail. These are the only claims remaining in the lawsuit; all other claims are hereby DISMISSED. No further amendments to the lawsuit shall be permitted.

**So ORDERED and SIGNED this 20th day of November, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE